**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allen Miles,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Chris Vasquez, et al.,<br><br>　　　　Defendants. | No. CV-07-1398-PHX-FJM<br><br>**ORDER** |

The court has before it defendants' motion to dismiss (doc. 10), plaintiff's response (doc. 12), and defendants' reply (doc. 14.). For the reasons below, the motion is granted with leave to amend the complaint.

**I**

For this motion, we accept as true plaintiff's version of the facts. Plaintiff Allen Miles started working for the Pinal County Sheriff's Office ("PCSO") in 1989. He was promoted six times and in 2005 became the first African-American to attain the rank of captain. On March 6, 2006, plaintiff was suspended and placed on administrative leave on the grounds that he had allegedly engaged in domestic violence. PCSO conducted two investigations, concluding that the allegations were false; however, plaintiff's suspension continued. On October 19, 2006, plaintiff testified in the United States District Court on behalf of Robert Gant, an African-American officer employed by PCSO, who had sued Pinal County and

then-Sheriff Roger Vanderpool for employment discrimination. On October 27, 2006, plaintiff was told that he would be terminated, which occurred one month later.

On December 1, 2006, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He alleged that PCSO had discriminated against him by suspending him for unsubstantiated domestic violence allegations, even though non-black employees against whom similar allegations had been substantiated were not disciplined. Plaintiff also alleged that PCSO fired him in retaliation for testifying in Robert Gant's discrimination action. The EEOC issued a notice of right to sue in April, 2007. Plaintiff brings this action against Pinal County and Chris Vasquez, current sheriff of Pinal County ("defendants"). Plaintiff has pled six counts: racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, et seq. (count I); retaliation under Title VII (count II); violation of 42 U.S.C. § 1983 (count III); wrongful termination (count IV); negligent application of policies and procedures (count V), and intentional infliction of emotional distress (count VI). Defendants move to dismiss counts IV, V, VI, and the claim for punitive damages.

**II**

We first address the wrongful discharge claim, count IV. Plaintiff alleges that he was terminated in retaliation for testifying in Robert Gant's discrimination action in October 2006. Plaintiff's pled legal theory is that the termination was a violation of the Arizona Civil Rights Act ("ACRA"),[1] and that this violation of a state statute is grounds for a wrongful discharge claim under the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501(3)(b)(I). Complaint ¶ 63.

Defendants contend that plaintiff has not pled a cognizable claim for wrongful discharge, and we agree. In Arizona, employment relationships are presumptively at-will and terminable by either party without cause. A.R.S. § 23-1501(2). There are some exceptions.

---

[1] Although plaintiff does not cite it, the ACRA provision most likely applicable is A.R.S. § 41-1471(A), which prohibits discrimination on the basis of participation in an investigation, proceeding, or hearing pursuant to § 41-1481.

- 2 -

1  See A.R.S. § 23-1501(3). For example, a wrongful discharge claim exists when an
2  "employer has terminated the employment relationship of an employee in violation of a
3  statute of this state." A.R.S. § 23-1501(3)(b). However, "[i]f the statute provides a remedy
4  to an employee . . . [those] are the exclusive remedies for the violation of the statute or the
5  public policy set forth in or arising out of the statute." Id. The AEPA explicitly names the
6  ACRA as an example of a statute that provides its own remedies. A.R.S. § 23-1501(3)(b)(I).
7  Therefore, a wrongful discharge claim cannot be premised on violation of the ACRA.[2] Count
8  IV is dismissed.

9  In his response to defendants' motion, plaintiff expresses a new wrongful discharge
10 theory and requests leave to amend the complaint.[3] Because defendants admit that no
11 prejudice would result, plaintiff's request is granted. Defendants contend, however, that
12 plaintiff's proposed amendments do not state a claim. Plaintiff wishes to amend the
13 complaint to allege, first, a violation of the ACRA and, second, a violation of the AEPA that
14 "is premised on conduct independent of ACRA." Response at 4.

15 Alleged violations of the ACRA must first be brought to the attention of the Civil
16 Rights Division of the Arizona Attorney General's Office by a written charge. A.R.S. §§ 41-
17 1471(A), -1481(A). An individual may bring a civil action under the ACRA only after the
18 Division has had an opportunity to investigate charges and, if it chooses, to instigate formal
19 or informal processes to address them. A.R.S. §§ 41-1471(B), (D), -1481(D), (H). Plaintiff
20 has not mentioned any charge filed with the Civil Rights Division. If, however, plaintiff has
21 filed such a charge and is now in a position to bring a civil action based on alleged ACRA
22 violations, the claim may be added to an amended complaint. Such a claim would lie, if at
23 all, only against an employer.

---

[2] In his response to defendants' motion, plaintiff contends that he "did not allege that Pinal County violated the Arizona Civil Rights Act ("ACRA") in his Complaint." Response at 3 n.1. Yet, he clearly did: "Defendants' subsequent termination of Plaintiff was done in violation of the Arizona Civil Rights Act." Complaint ¶ 63. What plaintiff did not do in the complaint was seek recovery under the ACRA.

[3] We agree with defendants that this is a new theory and not a clarification of the complaint.

1    As explained above, the AEPA does not allow a wrongful discharge claim that is
2 premised on alleged violations of the ACRA. Plaintiff proposes amending the complaint to
3 pursue two different bases for a wrongful discharge claim under the AEPA. First, plaintiff
4 contends that the AEPA, in and of itself, creates a claim for retaliatory discharge that is not
5 preempted by the ACRA. See A.R.S. § 23-1501(3)(c)(ii). Whether such a claim exists is not
6 clear, and we decline to address its ultimate propriety at this point, when it has yet to be
7 formally pled. Plaintiff may include such a claim in an amended complaint; however, if he
8 does so, he is encouraged to express the theory with precision. So far, plaintiff has failed to
9 present a coherent, cognizable theory of recovery for wrongful discharge.

10   Second, plaintiff would allege that the AEPA creates a wrongful discharge claim for
11 him as a public employee who "has a right to continued employment under the United States
12 Constitution, the Arizona Constitution, Arizona Revised Statutes, any applicable regulation,
13 policy, practice, or contract of . . . any subdivision of the state." A.R.S. § 23-1501(3)(b).
14 Specifically, plaintiff would allege that "Pinal County had a practice and/or unwritten policy
15 of not terminating its employees for alleged domestic violence charges." Response at 4.
16 Defendants' reliance on Demasse v. ITT Corp., 194 Ariz. 500, 984 P.2d 1138 (1999), is
17 inappropriate, because that case addressed implied-in-fact employment contracts at common
18 law and did not interpret the AEPA. In any event, plaintiff may amend his complaint, and
19 if he does, defendant may move to dismiss it.

**III**

21   We next address the negligence claim, count V. Plaintiff alleges, "Defendants had a
22 duty to apply its policies and procedures regarding disciplinary actions and investigations in
23 a fair and consistent manner." Complaint ¶ 73. Plaintiff further alleges that defendants
24 breached this duty by suspending and then firing him without cause, which resulted in
25 damages including pain, discomfort, and emotional distress. Defendants contend that this
26 theory does not state a legal claim, and we agree.

27   Plaintiff has nominally pled all the elements of a negligence claim. However, the
28 existence of a legal duty is a matter of law for the court to decide. Gipson v. Kasey, 214

1  Ariz. 141, 143, 150 P.3d 228, 230 (2007). Plaintiff provides no authority for the theory that
2  an employer has a duty, independent of contract and enforceable through negligence law, to
3  apply employment policies consistently. Accordingly, we conclude that no such duty exists.
4        A negligence claim in this action would interfere with other potential theories of
5  recovery. Under Arizona law, employees may seek recovery under contract law if the
6  violated employment policies constituted an implied-in-fact contract. <u>Demasse</u>, 194 Ariz.
7  at 505, 984 P.2d at 1143; <u>see also</u> A.R.S. § 23-1501(3)(a). Imposing a duty in negligence
8  would obviate that analysis and create a de facto contractual relationship, holding employers
9  liable for violating employment policies whether or not these policies fairly constituted
10 contractual promises. <u>Cf.</u> <u>Mack v. McDonnell Douglas Helicopter Co.</u>, 179 Ariz. 627, 630,
11 880 P.2d 1173, 1176 (Ct. App. 1994) (noting that violation of employment policies would
12 sound, if at all, in contract, not in tort). Furthermore, regardless of an implied-in-fact
13 contract, if an employee's termination violates the public policy of Arizona, recovery is
14 provided by the AEPA. We decline to broaden negligence law when developed theories are
15 already in place to remedy unlawful personnel actions. Accordingly, count V is dismissed,
16 without leave to amend.

**IV**

18       In count VI, plaintiff alleges that defendants "acted intentionally in such a manner as
19 to cause extreme emotional distress to the plaintiff," and that plaintiff in fact suffered
20 emotional distress. <u>Complaint</u> ¶¶ 78–79. Defendants contend that the intentional infliction
21 of emotional distress claim fails as a matter of law, and again we agree.
22       The first element of intentional infliction of emotional distress is that the defendant
23 must have engaged in extreme and outrageous conduct. <u>Citizen Pub. Co. v. Miller</u>, 210 Ariz.
24 513, 516, 115 P.3d 107, 110 (2005). "It is for the court to determine, in the first instance,
25 whether the defendant's conduct may reasonably be regarded as so extreme and outrageous
26 as to permit recovery." <u>Lucchesi v. Frederic N. Stimmell, M.D., Ltd.</u>, 149 Ariz. 76, 79, 716
27 P.2d 1013, 1016 (1986) (quoting <u>Restatement (Second) of Torts</u> § 46 cmt. h). The threshold
28 is high. To be actionable, the conduct must be "so outrageous in character and so extreme

1 in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious
2 and utterly intolerable." Patton v. First Fed. Sav. & Loan Ass'n, 118 Ariz. 473, 476, 578
3 P.2d 152, 155 (1978). Even conduct that is unjustifiable does not necessarily reach that
4 level. Nelson v. Phoenix Resort Corp., 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (Ct. App.
5 1994).

6      In the employment context, successful intentional infliction of emotional distress
7 claims generally involve more than an adverse personnel decision. See, e.g., Ford v. Revlon,
8 Inc., 153 Ariz. 38, 734 P.2d 580 (1987) (blatant sexual harassment); Alcorn v. Anbro Eng'g,
9 Inc., 468 P.2d 216 (Cal. 1970) (tirade of racial slurs). The conduct at issue in this action is
10 the job suspension and termination. We conclude that discharging an employee in violation
11 of a statute, without more, is not outrageous conduct that gives rise to a claim of intentional
12 infliction of emotional distress. See Spratt v. N. Auto Corp., 958 F. Supp. 456, 461 (D. Ariz.
13 1996); Mintz v. Bell Atl. Sys. Leasing Int'l, 183 Ariz. 550, 555, 905 P.2d 559, 564 (Ct. App.
14 1995); see also Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) ("[W]hile loss
15 of employment is unfortunate and unquestionably causes hardship, often severe, it is a
16 common event and cannot provide a basis for recovery for intentional infliction of emotional
17 distress."). As the complaint attests, federal and state statutory provisions specifically
18 address discriminatory and retaliatory personnel actions, so plaintiff is not without potential
19 remedies.

20      **V**

21      Finally, defendants correctly contend that plaintiff cannot recover punitive damages
22 from Pinal County or from Sheriff Vasquez in his official capacity. We first address the
23 federal claims. Punitive damages are unavailable from defendant Pinal County under counts
24 I and II because governments and political subdivisions are explicitly immune from punitive
25 damages under Title VII. 42 U.S.C. § 1981a(b)(1). As a "municipality," Pinal County is
26 also immune from punitive damages under 42 U.S.C. § 1983 (count III). City of Newport
27 v. Fact Concerts, Inc., 101 S. Ct. 2748, 2762, 453 U.S. 274, 271 (1981).

28      As for the federal claims against Sheriff Vasquez, we first rule on our own initiative

1 that counts I and II against him are dismissed, because individuals are not "employers"
2 covered by Title VII. <u>Miller v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 587 (9th Cir. 1993)
3 (construing 42 U.S.C. § 2000e(b)). Regarding count III under 42 U.S.C. § 1983, Sheriff
4 Vasquez is immune from punitive damages insofar as he is sued in his official capacity,
5 because an action against a government officer in his official capacity is equivalent to an
6 action against the government entity itself. <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 527 (9th Cir.
7 1996). To the extent Vasquez is joined in his official capacity, plaintiff's claim for punitive
8 damages against him is dismissed.

9 Plaintiff's state-law claims (counts IV–VI) are dismissed, but even if plaintiff
10 resurrects his wrongful discharge claim in an amended complaint, punitive damages are not
11 available. By statute, "[n]either a public entity nor a public employee acting within the scope
12 of his employment is liable for punitive or exemplary damages." A.R.S. § 12-820.04.
13 Accordingly, plaintiff has no state claim for punitive damages.

## VI

15 For the foregoing reasons, **IT IS HEREBY ORDERED GRANTING** defendants'
16 motion to dismiss counts IV, V, and VI, and all state claims for punitive damages and federal
17 claims for punitive damages against Pinal County and Chris Vasquez in his official capacity
18 (doc. 10). **IT IS FURTHER ORDERED** dismissing counts I and II against Vasquez.
19 Plaintiff shall have to and including November 12, 2007, to file an amended complaint.
20 Pursuant to Rule 15(a), Fed. R. Civ. P., defendants shall have ten days from the filing of the
21 amended complaint to file an answer. If no amended complaint is timely filed, defendants
22 shall have to and including November 19, 2007, to answer the original complaint.

23 DATED this 5th day of November, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge